1 | LAWRENCE E. SKIDMORE, CSB #137587
2 | KATHLEEN C. LYON, CSB #236224
Email: asilaw@asilaw.org
3 | Partners in ARONOWITZ SKIDMORE LYON
A Professional Law Corporation
4 | 200 Auburn Folsom Road, Suite 305
Auburn, California 95603
5 | Telephone: (530) 823-9736
Fax: (530) 823-5241
6 | Attorneys for Morgan Tire of Sacramento, Inc.

7

8 | THE UNITED STATES DISTRICT COURT
for the
9 | EASTERN DISTRICT OF CALIFORNIA

10 | MORGAN TIRE OF SACRAMENTO, INC. a California Corporation;

Civil Action No.:

11 | Plaintiffs,

COMPLAINT FOR:

12 | v.

1. BREACH OF WRITTEN COUNTY SUBCONTRACTS;

13 | THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio Corporation;

2. BREACH OF ORAL CONTRACT;
3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;

14 | WINGFOOT COMMERCIAL TIRE SYSTEMS, LLC, an Ohio limited liability company; and DOES 1 through 10,

15 | Defendants.

4. BREACH OF GOOD FAITH AND FAIR DEALING;

16 | 

5. VIOLATION OF SECTION 2 OF THE CLAYTON ACT [15 U.S.C §14]

17 | 

6. VIOLATION OF SECTION 3 OF THE SHERMAN ACT [15 U.S.C. §2]; AND

18 | 

7. UNFAIR BUSINESS COMPETITION.

19 | 

**JURY TRIAL DEMANDED**

20

21

22

23

24

25

26

27

28

1

**COMPLAINT**

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

1    Plaintiff MORGAN TIRE OF SACRAMENTO, INC., a California corporation, for its
2    complaint against THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio Corporation,
3    and WINGFOOT COMMERCIAL TIRE SYSTEMS, LLC, an Ohio limited liability company,
4    and DOES 1 through 10, Defendants, alleges as follows:

5                                            **PARTIES**

6    1.    Plaintiff MORGAN TIRE OF SACRAMENTO, INC. ("MORGAN TIRE") is a
7    corporation incorporated under the laws of the State of California and qualified to do business
8    within the State of California, with its principal office located at 1500 Auburn, Blvd.,
9    Sacramento County, California.

10   2.    Defendant THE GOODYEAR TIRE & RUBBER COMPANY
11   ("GOODYEAR") is a corporation incorporated under the laws of the State of Ohio, with its
12   principal office located at 1144 East Market Street, Akron, Ohio, transacting business in the
13   State of California.

14   3.    Defendant WINGFOOT COMMERCIAL TIRE SYSTEMS, LLC
15   ("WINGFOOT"), is an Ohio limited liability company organized and existing under the laws
16   of the State of Ohio and a wholly owned subsidiary of THE GOODYEAR TIRE & RUBBER
17   COMPANY, with its principal office located at 1000 South 21st Street, Fort Smith, Arkansas,
18   transacting business in California with a distribution center in Redding, California.

19   4.    The amount in controversy, without interest and costs, exceeds the sum or value
20   specified by 28 U.S.C. § 1332.

21                               **JURISDICTION AND VENUE**

22   5.    This court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil
23   action between corporations domiciled in different states in which the matter in controversy
24   exceeds, exclusive of interest and costs, seventy-five thousand dollars.

25   6.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because three
26   of the subject contracts are with the County of Sacramento, the City of Sacramento and the City
27   of Roseville; the contracts that are the subject of this complaint were executed in Sacramento,
28   California, and a substantial part of the events giving rise to this action arose within this Judicial

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

2

**COMPLAINT**

1   District, specifically at Plaintiff's primary place of business and the greater Sacramento area;

2   and because Defendants GOODYEAR and WINGFOOT are Ohio corporations which are

3   systematically and purposefully availing themselves, and at all relevant times have

4   systematically and purposefully availed themselves, of the privilege of conducting business

5   activities with Plaintiff and others in the State of California.

6        7.    Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(g) because

7   Defendants or their agents are subject to personal jurisdiction in California because Defendants

8   transact business within the State of California and contract elsewhere to supply goods and

9   services in the State of California.

10        8.    This Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. §

11   1391(b)(2) over all other claims contained within this complaint because all of Plaintiff's claims

12   are so related to claims in the action where this Court has original jurisdiction, that they form

13   part of the same case or controversy.[1]

14   **STATEMENT OF FACTS**

15        9.    MORGAN TIRE has been a Goodyear Tire distributor since 1993 and a

16   manufacturer of GOODYEAR retreads since 2001, operating out of its location in Sacramento

17   with a plant in Woodland, California. At all times herein, MORGAN TIRE and GOODYEAR

18   operated their retread relationship.

19   ///

20   ///

21   ///

22

23   [1] MORGAN TIRE previously brought an action in this Court against Goodyear, which action (Case 2:13-cv-

24   021135-KJM) was transferred to the federal court in Summit County Ohio based on the ruling of Judge Kimberley Mueller (Doc. No. 39) that the forum selection clause in an expired new tire distributorship agreement required the

25   transfer. In commencing the instant action, MORGAN TIRE is not disregarding the order in Case No. 2:13-cv-021135 but is, instead, filing the instant complaint without reference to that agreement and does not intend to seek

26   damages based on that agreement. Furthermore; (i) the actions of GOODYEAR stem primarily from the retread business as stated in this complaint; and (ii) the County Contracts were breached independently of any other

27   relationship between GOODYEAR and MORGAN TIRE. Additionally, MORGAN TIRE has been informed and believes that since the filing of the original complaint, the actions of GOODYEAR have resulted in multiple dealers terminating communications with competitors as well as an implied and coerced exclusivity requirement, which is

28   done for the purpose of restraining competition and trade.

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

3

**COMPLAINT**

1

## THE RETREAD AGREEMENT

2    10.    In 2001, MORGAN TIRE opened a GOODYEAR retread tire plant covering

3    16,000 square feet in Woodland, California, for GOODYEAR retread sales. MORGAN TIRE

4    and GOODYEAR have done business under a course of dealing acknowledged by their well-

5    established course of business dealings by and between GOODYEAR and MORGAN TIRE

6    (the "Contracting Parties") and by and between the Contracting Parties and third parties

7    including, but not limited to: supplying GOODYEAR retread tires to National Accounts (as

8    defined below), ordering retread rubber and equipment, and receiving bid prices and payment

9    and credit terms from GOODYEAR for the County Contracts, as defined below ("Retread

10   Operations").

11   11.    As part of the Retread Agreement, MORGAN TIRE had the exclusive right to

12   service GOODYEAR'S national accounts, including Penske, UPS and Federal Express,

13   (collectively "National Accounts"). The National Accounts typically had preapproval

14   requirements, such that a National Account could not use any retread it wanted. The brand tire

15   and the supplier had to be approved by each National Account's corporate headquarters. The

16   GOODYEAR tires supplied by MORGAN TIRE to the National Accounts were preapproved

17   for these National Accounts and MORGAN TIRE made substantial investments in its retread

18   shop to also be approved by the National Accounts as a supplier. The preapproval process can

19   take years, particularly for the retread tire with the additional safety considerations.

20   12.    The GOODYEAR National Accounts retread sales make up approximately 61%

21   of MORGAN TIRE'S gross retread sales.

22   ## THE COUNTY SUBCONTRACTS

23   13.    Since 1971, MORGAN TIRE has entered into numerous written agreements with

24   the County of Sacramento ("County") to supply the County's needs for tires.  MORGAN TIRE

25   has had written agreements with the County to supply GOODYEAR brand new tires since 1993

26   and GOODYEAR brand retread tires since 2009 (the "County of Sacramento Agreement").  A

27   copy of the most current County of Sacramento Agreement, which is in typical form and terms

28   as prior County agreements, is attached hereto as Exhibit "A."

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

4

14.     The County of Sacramento Agreement is put out for public bid by the County no less than every three years. The term of the County of Sacramento Agreement is one year, with the ability to renew the agreement for two additional terms of one year. In its history of servicing the County of Sacramento Agreement, the County has always been pleased with MORGAN TIRE'S performance and competitive pricing and has never failed to renew the agreements for each of the two successive years.

15.     As has been the historical pattern, MORGAN TIRE would bid on the County of Sacramento's tire bid packages. As part of that bid, Northern California GOODYEAR employees would input the retread tire prices directly into MORGAN TIRE'S bid package to the County of Sacramento. MORGAN TIRE would add its portion of the bid and, in reliance on the pricing that GOODYEAR supplied for the bid, submit the bid as one complete and final package. GOODYEAR made and entered its bid on or about April 12, 2013 through GOODYEAR'S participation in the bid MORGAN TIRE submitted to Sacramento County.

16.     In June 2012, MORGAN TIRE, with GOODYEAR'S promised pricing as submitted by GOODYEAR to MORGAN TIRE, was awarded the new County of Sacramento Agreement, a copy of which is attached hereto as Exhibit "A," thus creating a contractor-subcontractor contract between MORGAN TIRE, as contractor to County of Sacramento, and GOODYEAR as subcontractor to MORGAN TIRE for GOODYEAR to supply MORGAN TIRE with all tire and retread material required for MORGAN TIRE to fulfill its obligations under the County of Sacramento Agreement (the "County of Sacramento Subcontract").

17.     Not only did GOODYEAR agree to supply MORGAN TIRE with all tire and retread material required for MORGAN TIRE to fulfill its obligations under the County of Sacramento Agreement, as a condition for the prices that GOODYEAR bid to MORGAN TIRE for the County of Sacramento Agreement, GOODYEAR required that MORGAN TIRE agree to use GOODYEAR'S more expensive "cushion and precure" for MORGAN TIRE'S retread plant. As a further condition for GOODYEAR'S pricing on the County of Sacramento Agreement, GOODYEAR required MORGAN TIRE to purchase and install new equipment in MORGAN TIRE'S retread plant. MORGAN TIRE agreed to those conditions, agreed to use

ARONOWITZ · SKIDMORE · LYON
A  P r o f e s s i o n a l  L a w  C o r p o r a t i o n
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

**COMPLAINT**

1  GOODYEAR "cushion and precure" at its retread plant and did purchase and install the

2  equipment that GOODYEAR required as conditions for its pricing for the County of

3  Sacramento Agreement. A true and correct copy of an e-mail dated April 30, 2012 in which

4  GOODYEAR'S Retread Commercial Account Manager, Trey Adkins, provided MORGAN

5  TIRE with the pricing for the County of Sacramento Agreement and informed MORGAN TIRE

6  of the conditions to which GOODYEAR required MORGAN TIRE agree for that pricing is

7  attached hereto as Exhibit "B."

8      18.    As part of the County of Sacramento Agreement, surrounding counties and/or

9  cities can elect to piggy-back onto the County of Sacramento Agreement, thereby avoiding the

10  expensive bid process. As part of the June, 2012, County of Sacramento Agreement, the City of

11  Sacramento and the City of Roseville entered into Piggy-Back Contracts with MORGAN TIRE

12  based on the County bid package and retread prices supplied by GOODYEAR (collectively, the

13  "Piggy-Back Contracts"; the County of Sacramento Agreement and the Piggy-Back Contracts,

14  collectively, the "County Contracts"), thus making MORGAN TIRE contractor to the City of

15  Sacramento and the City of Roseville and making GOODYEAR subcontractor to MORGAN

16  TIRE on those contracts (the "City of Sacramento Subcontract" and the "City of Roseville

17  Subcontract," respectively). The County of Sacramento, City of Sacramento and City of

18  Roseville Subcontracts are collectively referred to herein as the "County Subcontracts." A copy

19  of the City of Sacramento Piggy-Back Contract is attached hereto as Exhibit "C." A copy of the

20  City of Roseville Piggy-Back Contract is attached hereto as Exhibit "D."

21      19.    During December of 2009, MORGAN TIRE added 6,750 square feet to its

22  existing retread shop in Woodland, California.  In 2010, MORGAN TIRE paid approximately

23  $156,000.00 to purchase additional land adjacent to its Woodland Plant as well.  These

24  investments were made to increase the size of its GOODYEAR retread business and particularly

25  to accommodate UPS.

26      20.    In the midst of increasing its GOODYEAR volumes and production line,

27  MORGAN TIRE also planned to build a 5,000 square foot retread plant in Sparks, Nevada, to

28  produce and sell retread tires for Continental Tires ("Continental"), a newcomer to the western

6

**COMPLAINT**

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

1  region retread market. When this was discussed in August 2012 with GOODYEAR,

2  GOODYEAR employee Todd Laube threatened to cut off all supply to MORGAN TIRE

3  regardless of the non-exclusive nature of GOODYEAR and MORGAN TIRE'S agreement.

4  GOODYEAR employee Trey Adkins told Leo Serrao of MORGAN TIRE, "GOODYEAR

5  won't be happy – They will cancel you." Jeff Stewart, GOODYEAR'S regional manager, told

6  Brant Serrao of MORGAN TIRE that GOODYEAR would cancel their agreement and

7  discontinue MORGAN TIRE'S ability to order material if they continued talks with

8  Continental. Brant Serrao brought up the fact that the GOODYEAR contract was not exclusive

9  with Jeff Stewart and that MORGAN TIRE always wanted to put a plant in Sparks. Jeff Stewart

10  said "we never thought you would ever do any plant other than GOODYEAR." However, when

11  Brant Serrao of MORGAN TIRE next talked with GOODYEAR local representative, Robert

12  Attaway, Mr. Attaway told Brant, "Don't mind Jeff." Brant Serrao and Mr. Attaway have had

13  many conversations over the years about the advantages a company would have in having more

14  than one retread brand to market.

15      21.     MORGAN TIRE assured GOODYEAR it was only going to produce the

16  Continental retreads at the small Sparks, Nevada, plant. MORGAN TIRE also pointed out to

17  GOODYEAR that other GOODYEAR retread distributors manufactured retreads of other

18  brands and that there has never been an exclusivity requirement between GOODYEAR and

19  MORGAN TIRE, or with any GOODYEAR distributor to the knowledge of MORGAN TIRE.

20  In fact, when MORGAN TIRE first became a GOODYEAR retreader, MORGAN TIRE

21  questioned GOODYEAR employees Rick Ress and John Hunt about the issue of exclusivity

22  and they assured Bryant, Brant and Leo Serrao that the retreading agreement was not exclusive

23  and only pertained to MORGAN TIRE'S Woodland location.  It was made clear at that time

24  that MORGAN TIRE'S goal was to one day have more than one retread brand to manufacture

25  and market.

26      22.     MORGAN TIRE is informed and believes, and on that basis alleges that

27  GOODYEAR similarly threatened other new and retread tire distributors that were in

28  discussions with Continental. Over the following six months, despite GOODYEAR'S

7

**COMPLAINT**

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

1  knowledge that MORGAN TIRE was still discussing the Nevada plant with Continental,

2  GOODYEAR allowed and encouraged MORGAN TIRE to purchase large volumes of tires and

3  retread material. MORGAN TIRE was also stocking up for the County of Sacramento

4  Agreement and the Piggy-Back Contracts.

5       23.    In December 2012, to maintain the quality requirements of its GOODYEAR

6  retread business, MORGAN TIRE was required by GOODYEAR and UPS to purchase a new

7  retread machine from GOODYEAR at a cost of approximately $150,000.00. GOODYEAR

8  refused to sell the new machine to MORGAN TIRE, although it was selling the machine to its

9  other distributors nationwide, unless MORGAN TIRE discontinued talks with Continental.

10  Todd Laube, GOODYEAR employee, said to Leo Serrao in January, 2013, "give up your talks

11  with Continental and we'll sell you the machine." However, in reliance on the volume of

12  business it did for UPS, and due to the necessity of having the machine to honor its

13  GOODYEAR National Accounts and the County Contracts, MORGAN TIRE purchased the

14  new machine directly from the manufacturer for $152,855.00, and not on the more favorable

15  terms given by GOODYEAR to other dealers.

16       24.    On January 17, 2013, MORGAN TIRE was shocked to receive a letter from

17  GOODYEAR stating GOODYEAR was summarily terminating MORGAN TIRE'S access to

18  GOODYEAR'S online ordering and accounting system, "Tire HQ" (the "Termination Letter).

19  The Termination Letter was given with no explanation and said to be effective as of February

20  16, 2013. However, GOODYEAR cut off MORGAN TIRE'S access to Tire HQ, on January 28,

21  2013, cutting off all further business only ten days after the Termination Letter was received.

22  MORGAN TIRE was not given any opportunity to discuss the Termination Letter. MORGAN

23  TIRE was told by GOODYEAR'S employee Doug Whittington that MORGAN TIRE was "not

24  a team player," and that the termination was because they had not discontinued talks with

25  Continental for its Nevada property, although no contract had been signed with Continental at

26  that time.

27       25.    At receipt of the Termination Letter, MORGAN TIRE had approximately

28  $358,784.12 in GOODYEAR tire material in stock, of which $223,223.02 was Tread Rubber.

26.     As a proximate cause of the Termination Letter and early termination of the online ordering account, MORGAN TIRE did not have enough tire material on hand and was unable to honor its County of Sacramento Agreement or the associated Piggy-Back Contracts. The National Accounts that MORGAN TIRE serviced questioned MORGAN TIRE'S financial soundness and inquired as to whether MORGAN TIRE was in debt to GOODYEAR, causing the sudden termination. It was previously unheard of for GOODYEAR to cancel such a beneficial distributorship. MORGAN TIRE subsequently lost all of its National Account business and suffered substantial reputation damage.

27.     MORGAN TIRE is informed and believes, and on that basis alleges that GOODYEAR, subsequent to its abrupt termination of MORGAN TIRE'S Distributorship Agreements, promised the County of Sacramento and the Piggy-Back Contract parties that GOODYEAR'S subsidiary, WINGFOOT, would fulfill the County of Sacramento Agreement and Piggy-Back Contracts at the same price as MORGAN TIRE, despite the fact that WINGFOOT previously bid the same County of Sacramento Agreement at a higher price.

28.     MORGAN TIRE is informed and believes, and on that basis alleges that WINGFOOT has taken over the servicing of the GOODYEAR National Accounts previously serviced by MORGAN TIRE, despite, MORGAN TIRE is informed and believes, that it is more costly for WINGFOOT to supply those accounts due to its geographical location.

29.     MORGAN TIRE is informed and believes and on that basis alleges that GOODYEAR misrepresented to the County of Sacramento, the City of Sacramento, and the City of Roseville that the relationship with MORGAN TIRE was terminated because MORGAN TIRE had agreed to be an exclusive GOODYEAR Dealer.

30.     MORGAN TIRE is informed and believes, and on that basis alleges that GOODYEAR cancelled its relationship with at least one other California GOODYEAR tire dealer because that dealer wanted to carry Continental product.

31.     MORGAN TIRE is further informed and believes, and on that basis alleges, that GOODYEAR made it known throughout the tire industry that MORGAN TIRE was an example of what would happen to dealers that engaged in talks with Continental to do Continental tire

9

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

1  business.

2      32.     MORGAN TIRE is informed and believes, and on that basis alleges that

3  GOODYEAR terminated MORGAN TIRE'S access to GOODYEAR product in part to gain

4  access to the County Contracts and National Accounts for its subsidiary, WINGFOOT, and in

5  part to stifle competition in denying access to the northern California market and national

6  markets to Continental as a retreader.

7  <u>**FIRST CLAIM FOR BREACH OF THE COUNTY SUBCONTRACTS**</u>

8  <u>**(against GOODYEAR)**</u>

9      33.     Plaintiff incorporates by reference each and every allegation contained in

10  Paragraphs 1 through 32 as though fully set forth herein.

11      34.     The County of Sacramento Agreement, the Piggy-Back Contracts, and

12  Subcontracts are governed by the laws of the State of California.

13      35.     In full reliance on the sub-bid submitted by GOODYEAR for the County of

14  Sacramento Agreement, MORGAN TIRE made its bid to the County of Sacramento, which bid

15  was accepted as the winning bid, thereby binding MORGAN TIRE to the County of

16  Sacramento Agreement and making GOODYEAR contractually bound to MORGAN TIRE to

17  honor that agreement as subcontractor/supplier to MORGAN TIRE.

18      36.     In full reliance on the sub-bid submitted by GOODYEAR for the County of

19  Sacramento Agreement, and subsequent awarding of the County of Sacramento Agreement to

20  MORGAN TIRE, MORGAN TIRE executed a contract with the City of Sacramento to supply

21  its new tire and retread tire needs, thereby making GOODYEAR contractually bound to

22  MORGAN TIRE to honor that agreement.

23      37.     In full reliance on the sub-bid submitted by GOODYEAR for the County of

24  Sacramento Agreement, and subsequent awarding of the County of Sacramento Agreement to

25  MORGAN TIRE, MORGAN TIRE executed a contract with the City of Roseville to supply its

26  new tire and retread tire needs, thereby making GOODYEAR contractually bound to

27  MORGAN TIRE to honor that agreement.

28      38.     In full reliance on the sub-bid of GOODYEAR, and subsequent awarding of the

10

**COMPLAINT**

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

1  County of Sacramento Agreement to MORGAN TIRE, MORGAN TIRE purchased stock from

2  GOODYEAR to satisfy the County of Sacramento Agreement, the City of Sacramento Contract

3  and the City of Roseville Contract.

4    39.    GOODYEAR thereafter breached its County Subcontracts with MORGAN TIRE

5  by refusing to supply MORGAN TIRE with the aforementioned contract requirements, thereby

6  making it impossible for MORGAN TIRE to honor the County Contracts.

7    40.    GOODYEAR was obligated to perform the County Subcontracts regardless of

8  the dealer status between GOODYEAR and MORGAN TIRE. GOODYEAR improperly tied its

9  obligation to perform to the dealer's status of MORGAN TIRE, which status GOODYEAR

10  summarily terminated.

11    41.    MORGAN TIRE has performed, or been excused or prevented by GOODYEAR

12  from performing, all conditions, covenants, and promises required of it under the County

13  Contracts, and those conditions, covenants, and promises required of it under the County

14  Subcontracts with GOODYEAR.

15    42.    As a direct result of GOODYEAR'S breach of its subcontract agreements made

16  on these contracts, MORGAN TIRE could not fulfill the aforementioned County Contracts and

17  said contracts were terminated by the City and County of Sacramento and the City of Roseville.

18    43.    Due to GOODYEAR'S breach of the County Subcontracts, Morgan has suffered

19  monetary and reputation damages in an amount to be proven at trial.

20    44.    As a proximate cause of the termination of the County Subcontracts, resulting in

21  the loss of the County Contracts, MORGAN TIRE lost the benefit of its bargain on the County

22  Contracts in the amount of its projected profits, which profits are certain and unambiguous from

23  extensive prior dealings and contracts of the exact nature in an amount to be proven at trial,

24  which amount is estimated to be in excess of $500,000.00.

25    45.    MORGAN TIRE is informed and believes, and on that basis alleges, that it is the

26  practice of GOODYEAR to repurchase excess material from terminated suppliers. MORGAN

27  TIRE alleges that GOODYEAR refused to repurchase the GOODYEAR excess material from

28  MORGAN TIRE for the aforementioned contracts in order to further damage MORGAN TIRE

1  and make an example of them in the tire industry. MORGAN TIRE is informed and believes

2  that GOODYEAR specifically refused to repurchase the excess material unless MORGAN

3  TIRE gave GOODYEAR a full release from any damages due to their wrongful bad faith

4  termination of the supplier relationship. As a direct result, MORGAN TIRE was left with

5  substantial excess inventory that MORGAN TIRE could not sell, or had to sell at a loss, which

6  amounts shall be determined at trial, but is in excess of $200,000.00.

7       Wherefore, Plaintiff prays for relief as set forth below.

8  ## SECOND CLAIM FOR BREACH OF ORAL CONTRACT

9  ### (Against GOODYEAR)

10      46.   Plaintiff incorporates by reference each and every allegation contained in

11  Paragraphs 1 through 45 as though fully set forth herein.

12      47.   The Retread Agreement is governed by the laws of the State of California.

13      48.   In full reliance on its long standing course of dealing with GOODYEAR,

14  MORGAN TIRE purchased large quantities of rubber stock as well as the new retread machine

15  required for GOODYEAR retreads to the National Accounts at the cost of $152,855.00 and not

16  on the more favorable terms given by GOODYEAR to other dealers. MORGAN TIRE, with the

17  knowledge and assurance of GOODYEAR, purchased the property adjacent the Woodland plant

18  for $150,000.00 to expand their GOODYEAR retread operations.

19      49.   GOODYEAR thereafter breached its agreement with MORGAN TIRE by

20  refusing to allow MORGAN TIRE to supply the retread needs of the National Accounts.

21      50.   MORGAN TIRE has performed, or been excused, or prevented by GOODYEAR

22  from performing, all conditions, covenants, and promises required of it under their course of

23  performance contract with GOODYEAR.

24      51.   As a direct result of GOODYEAR'S breach of its subcontract agreements made

25  on these contracts, MORGAN TIRE could not service the aforementioned National contracts

26  and the National Accounts were thereafter serviced by GOODYEAR'S wholly owned

27  subsidiary, WINGFOOT.

28      52.   Due to GOODYEAR'S breach of the Retread Agreement, MORGAN TIRE has

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

12

**COMPLAINT**

1    suffered monetary and reputation damages in an amount to be proven at trial.

2        53.    MORGAN TIRE is informed and believes, and on that basis alleges, that it is the

3    practice of GOODYEAR to repurchase excess material from terminated suppliers. MORGAN

4    TIRE alleges that GOODYEAR refused to repurchase the GOODYEAR excess material from

5    MORGAN TIRE for National Accounts in order to further damage MORGAN TIRE and make

6    an example of them in the tire industry.

7        54.    MORGAN TIRE is informed and believes that GOODYEAR specifically

8    refused to repurchase the excess material unless MORGAN TIRE gave GOODYEAR a full

9    release from any damages due to their wrongful bad faith termination of the supplier

10   relationship. As a direct result, MORGAN TIRE was left with substantial excess inventory, that

11   MORGAN TIRE could not sell, or had to sell at a loss, which amounts shall be determined at

12   trial, but is in excess of $200,000.00.

13       Wherefore, Plaintiff prays for relief as set forth below.

14   **THIRD CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE**

15                  **BUSINESS ADVANTAGE**

16                  **(Against All Defendants)**

17       55.    Plaintiff incorporates by reference each and every allegation contained in

18   Paragraphs 1 through 54 as though fully set forth herein.

19       56.    MORGAN TIRE has had an ongoing business relationship for decades with the

20   National Accounts and the County of Sacramento, City of Sacramento and City of Roseville.

21   GOODYEAR and WINGFOOT were aware that MORGAN TIRE profited from these ongoing

22   business relationships.

23       57.    MORGAN TIRE is informed and believes that on or after January 18, 2013,

24   GOODYEAR sent emails to and/or had conversations with multiple representatives of the

25   National Accounts and with the County of Sacramento and/or the City of Sacramento and City

26   of Roseville, who had an ongoing business relationship with MORGAN TIRE. In these

27   communications GOODYEAR intentionally made disparaging, inaccurate and untrue

28   statements about MORGAN TIRE and its officers and the financial condition of MORGAN

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

TIRE with the intent to harm MORGAN TIRE financially and induce those representatives to no longer use MORGAN TIRE'S services but to instead to use the services of WINGFOOT.

58.     GOODYEAR further implied to the entities above that MORGAN TIRE was in breach of an alleged exclusive contract with GOODYEAR.

59.     MORGAN TIRE is further informed and believes that GOODYEAR and WINGFOOT provided pricing to MORGAN TIRE'S business relationships identified above, which prices represented a loss to GOODYEAR and WINGFOOT, but which prices were submitted with the intent to interfere with MORGAN TIRE'S business relationships with those third parties.

60.     As a result of GOODYEAR'S interference and disparaging statements, MORGAN TIRE'S professional reputation among these representatives, as well as like users of MORGAN TIRE, has been damaged.

61.     As a further proximate result, MORGAN TIRE has lost the expected economic advantage of its contracts and of an ongoing relationship with said representatives in an amount to be proven at trial.

62.     MORGAN TIRE is informed and believes and on that basis alleges that GOODYEAR'S actions stated herein were willful and done with malice and intent to harm MORGAN TIRE for wrongful purposes, such that MORGAN TIRE is entitled to exemplary relief and that such punitive damages are required to ensure that GOODYEAR ceases its wrongful and abusive strong-arm practices.

Wherefore, Plaintiff prays for relief as set forth below.

## FOURTH CLAIM FOR BREACH OF COVENANT OF
## GOOD FAITH AND FAIR DEALING
### (Against GOODYEAR)

63.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 62 as though fully set forth herein.

64.     All Agreements set forth above contain an implied covenant of good faith and fair dealing by which GOODYEAR agreed to refrain from doing any act which would prevent

14

1  or impede MORGAN TIRE from enjoying the benefits of those agreements. Said covenant of

2  good faith requires GOODYEAR to deal fairly, honestly and reasonably in performing the

3  terms and conditions of said agreements.

4       65.    The covenant of good faith and fair dealing inheres in every contract. MORGAN

5  TIRE performed each contract and every obligation of each agreement with good faith and fair

6  dealing to the benefit of GOODYEAR.

7       66.    By the above stated actions of GOODYEAR, GOODYEAR breached the

8  covenant of good faith and fair dealing by not acting fairly, honestly or reasonably as to the

9  terms of the express County Subcontracts and as to the terms of implied and oral agreements in

10  the course of dealing between MORGAN TIRE and GOODYEAR for decades, and by refusing

11  to supply MORGAN TIRE'S requirements for GOODYEAR product.

12       67.    GOODYEAR additionally breached the duty of good faith and fair dealing after

13  the termination of their relationship by refusing to wind up outstanding amounts due MORGAN

14  TIRE including, but not limited to:

15       a.    refusal to repurchase GOODYEAR retread rubber stock from MORGAN TIRE,

16           which stock MORGAN TIRE carried solely to service the agreements herein

17           referenced above in an amount in excess of $200,000.00;

18       b.    despite GOODYEAR'S January 17, 2013 letter clearly stating that GOODYEAR

19           would process any outstanding warranties, GOODYEAR refused and still refuses

20           to process said warranties leaving MORGAN TIRE with defective tread rubber

21           on warranty, in an amount in excess of $20,000.00;

22       c.    refusal to credit MORGAN TIRE for the purchase of a $152,000.00 retread

23           machine, which was purchased in reliance on GOODYEAR'S National Accounts

24           retreading.

25       68.    As a direct and proximate result of GOODYEAR'S breach, MORGAN TIRE has

26  suffered the above stated damages and has suffered the loss of the benefit of their agreements

27  with GOODYEAR in an amount in excess of the minimum jurisdiction of this Court, which

28  amount shall be proven at trial.

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

**COMPLAINT**

Wherefore, Plaintiff prays for relief as set forth below.

## FIFTH CLAIM FOR VIOLATION OF

## SECTION 3 OF THE CLAYTON ACT 15 U.S.C.S §14

### (Against Goodyear)

69.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 68 as though fully set forth herein.

70.     By the aforementioned acts, GOODYEAR used its market dominance to eliminate MORGAN TIRE as a dealer and to induce MORGAN TIRE to breach its County Contracts, and, in doing so, used its market dominance to exclude and/or stifle competition in the western region of the United States by making an example of MORGAN TIRE.

71.     Without the ability for competitors to have dealers and multiple strategic locations, as well as local manufacturers of retread tires, such as GOODYEAR has, the cost of servicing the market is prohibitive. The market to manufacture retreads has high barriers to entry including cost of equipment and licensing.  In some cases, local codes prohibit additional retail manufacturers within a county.  GOODYEAR'S coercive actions to make retread manufacturers deal with them exclusively creates an extraordinarily high bar to competition.

72.     GOODYEAR has succeeded in scaring other dealers and retread manufacturers into ceasing communications with Continental and other competitors by ripening the course of dealing between GOODYEAR and MORGAN TIRE into an exclusive requirements contract through coercion and other strong-arm tactics in violation of Section 3 of the Clayton Act 15 U.S.C.S. § 14.

73.     MORGAN TIRE is informed and believes and on that basis alleges that GOODYEAR'S actions stated herein were willful and done with malice and intent to harm MORGAN TIRE for wrongful purposes, such that MORGAN TIRE is entitled to treble damages to ensure that GOODYEAR ceases its wrongful and abusive strong-arm practices.

Wherefore, Plaintiff prays for relief as set forth below.

///

///

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

COMPLAINT

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

## SIXTH CLAIM FOR VIOLATION OF

## SECTION 2 OF THE SHERMAN ACT 15 U.S.C.S §2

### (Against Goodyear)

74.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 73 as though fully set forth herein.

75.     By the aforementioned acts, GOODYEAR used its market dominance to eliminate MORGAN TIRE and in doing so, used its market dominance to exclude and/or stifle competition in the western region of the United States.

76.     Without the ability for competitors to have dealers and multiple strategic locations, as well as local manufacturers of retread tires, such as GOODYEAR has, the cost of servicing the market is prohibitive. The market to manufacture retreads has high barriers to entry including cost of equipment and licensing.  In some cases local codes prohibit additional retail manufacturers within a county.  GOODYEAR'S coercive actions to make retread manufacturers deal with them exclusively creates an extraordinarily high bar to competition.

77.     GOODYEAR has succeeded in scaring other dealers and retread manufacturers into ceasing communications with Continental and other competitors by ripening the course of dealing between GOODYEAR and MORGAN TIRE into an exclusive requirements contract through coercion and other strong-arm tactics in violation of Section 2 of the Sherman Act 15 U.S.C.S. § 2.

78.     MORGAN TIRE is informed and believes and on that basis alleges that GOODYEAR'S actions stated herein were willful and done with malice and intent to harm MORGAN TIRE for wrongful purposes, such that MORGAN TIRE is entitled to treble damages to ensure that GOODYEAR ceases its wrongful and abusive strong-arm practices.

Wherefore, Plaintiff prays for relief as set forth below.

///

///

///

///

**COMPLAINT**

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

## SEVENTH CLAIM FOR UNFAIR BUSINESS COMPETITION

### (Against All Defendants)

79.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 78 as though fully set forth herein.

80.     GOODYEAR terminated MORGAN TIRE'S ability to service its County Contracts and the National Accounts because MORGAN TIRE did not cease negotiations with Continental to put a Continental retread plant in Sparks, Nevada, where GOODYEAR dominates the retread market with two retread dealers in Sparks and one of the largest independent retread dealers exclusive to GOODYEAR in close by Reno, Nevada.

81.     Although MORGAN TIRE had not yet entered into any agreement with Continental, GOODYEAR terminated MORGAN TIRE'S access to tires and retread for the County Subcontracts and the National Accounts in February 2013, informing MORGAN TIRE that the cancellation was based on MORGAN TIRE'S refusal to cease retread negotiations with Continental.

82.     GOODYEAR told the representatives of the County Contracts that MORGAN TIRE was terminated because it breached required exclusivity in its agreements.

83.     MORGAN TIRE is informed and believes that GOODYEAR first threatened MORGAN TIRE to cause it to cease communications with Continental because it did not want Continental retread operations gaining a foothold in the western region of the country where GOODYEAR was one of the top two retreaders, servicing and supplying at least one-third of the retread market needs.  GOODYEAR then caused the complete and very public termination of the relationship, making it widely known that MORGAN TIRE was cancelled because of its communications with Continental, in order to quell competition by using MORGAN TIRE as an example to other GOODYEAR dealers of the consequences GOODYEAR imposes upon dealers who fail to adhere to GOODYEAR'S unwritten, but predominant demands of exclusivity.

84.     MORGAN TIRE is informed and believes that GOODYEAR cancelled its dealer relationship with another small California tire shop that was also engaged in talks with

**COMPLAINT**

1   Continental.  Since the termination of MORGAN TIRE, MORGAN TIRE is informed and

2   believes that all other GOODYEAR dealers ceased communications with Continental.

3       85.     GOODYEAR'S sudden cancellation of the agreements was also done in

4   collusion with WINGFOOT with the wrongful intent of harming MORGAN TIRE'S business

5   prospects and damaging its professional reputation among the tire purchasing community for

6   the aforesaid reasons. GOODYEAR and WINGFOOT engaged in the aforementioned wrongful

7   acts, using GOODYEAR'S superior strength and dominance in the market and its relationship

8   with subsidiary company WINGFOOT to give them a competitive advantage in the market by

9   ousting MORGAN TIRE and using WINGFOOT to takeover MORGAN TIRE'S business.

10      86.     MORGAN TIRE is informed and believes that GOODYEAR and WINGFOOT

11  used their superior position and mutual relationship to wrest the County of Sacramento

12  Agreement and Piggy-Back Contracts from MORGAN TIRE to WINGFOOT and to give

13  MORGAN TIRE'S National Accounts business to WINGFOOT.

14      87.     MORGAN TIRE is informed and believes that GOODYEAR and WINGFOOT

15  further used their superior position and collusive relationship to impede competition.  Without

16  WINGFOOT, GOODYEAR would not have been able to summarily terminate a dealer such as

17  MORGAN TIRE.

18      88.     GOODYEAR and WINGFOOT present the continuing threat of violating the

19  Unfair Practices Act by using its wrongful strong-arm tactics to ensure local GOODYEAR

20  dealers comply with its demands concerning offering competing tire brand services.

21      89.     GOODYEAR must be enjoined from threatening long-standing dealers with

22  termination for lack of exclusivity and WINGFOOT must be enjoined from enabling

23  GOODYEAR to take these wrongful actions by colluding to service the markets of the

24  terminated dealers.

25      90.     As a proximate result of the above-mentioned acts of GOODYEAR and

26  WINGFOOT, MORGAN TIRE has been deprived of the business from the National Accounts

27  as well as the County Contracts, to its damage in an amount to be shown at trial.

28      WHEREFORE, Plaintiff demands judgment as follows:

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

**COMPLAINT**

1   **ON THE FIRST CAUSE OF ACTION**

2       1.     As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY: Actual,

3   consequential and incidental damages according to proof; and

4       2.     Costs of suit and such other relief as the Court deems just and proper.

5   **ON THE SECOND CAUSE OF ACTION**

6       1.     As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY: Actual,

7   consequential and incidental damages according to proof; and

8       2.     Costs of suit and such other relief as the Court deems just and proper.

9   **ON THE THIRD CAUSE OF ACTION**

10      1.     As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY: Actual,

11  consequential and incidental damages according to proof;

12      2.     As to Defendant WINGFOOT COMMERCIAL TIRE SYSTEMS, LLC: Actual,

13  consequential and incidental damages according to proof;

14      3.     As to All Defendants: Punitive damages according to proof; and

15      4.     As to All Defendants: Interest, costs of suit and such other relief as the Court

16  deems just and proper.

17  **ON THE FOURTH CAUSE OF ACTION**

18      As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY:

19      1.     Actual, consequential and incidental damages according to proof; and reasonable

20  attorneys' fees pursuant to contract; and

21      2.     Costs of suit and such other relief as the Court deems just and proper.

22  **ON THE FIFTH CAUSE OF ACTION**

23      As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY:

24      1.     Actual, consequential and incidental damages according to proof;

25      2.     Trebled damages according to statute;

26      3.     Attorneys' fees; and

27      4.     Costs of suit and such other relief as the Court deems just and proper.

28

ARONOWITZ · SKIDMORE · LYON
A Professional Law Corporation
200 Auburn Folsom Road, Suite 305, Auburn, CA 95603
Tel (530)823-9736, Fax (530) 823-5241

**COMPLAINT**

1   **ON THE SIXTH CAUSE OF ACTION**

2           As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY:

3       1.      Actual, consequential and incidental damages according to proof;

4       2.      Trebled damages according to statute;

5       3.      Attorneys' fees; and

6       4.      Costs of suit and such other relief as the Court deems just and proper.

7   **ON THE SEVENTH CAUSE OF ACTION**

8       1.      As to Defendant THE GOODYEAR TIRE & RUBBER COMPANY: Actual,

9   consequential and incidental damages according to proof; and

10      2.      Costs of suit and such other relief as the Court deems just and proper.

11

12  Dated: January 16, 2015                    Respectfully submitted,

13                                             ARONOWITZ SKIDMORE LYON

14                                             A Professional Law Corporation

15

16                                             By:  /s/  *Kathleen C. Lyon*
                                               KATHLEEN C. LYON
17                                             Aronowitz Skidmore Lyon
                                               A Professional Law Corporation
18                                             200 Auburn Folsom Road, Suite 305
                                               Auburn CA 95603
19                                             klyon@asilaw.org
                                               (530) 823-9736
20                                             Attorney for Morgan Tire of Sacramento, Inc.

21

22

23

24

25

26

27

28

*Left margin (vertical text):* ARONOWITZ · SKIDMORE · LYON   A Professional Law Corporation   200 Auburn Folsom Road, Suite 305, Auburn, CA 95603   Tel (530)823-9736, Fax (530) 823-5241

**COMPLAINT**