UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN TIRE OF SACRAMENTO, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio corporation; and WINGFOOT COMMERCIAL TIRE SYSTEMS, LLC, an Ohio limited liability company,<br><br>Defendants. | No. 2:15-cv-00133-KJM-AC<br><br>ORDER |

        This case, despite its recent vintage, is familiar to this court. In 2013, Morgan Tire of Sacramento, Inc. sued the Goodyear Tire & Rubber Company and Wingfoot Commercial Tire Systems, LLC (together, "Goodyear"). It alleged Goodyear had breached tire supply contracts, attempted to coerce it into an exclusivity agreement, and took over its business. In a previous order, the court enforced the parties' agreement to litigate in Ohio, granting Goodyear's motion to transfer. Morgan Tire then voluntarily dismissed its complaint and filed this action, alleging essentially the same facts and claims, but eliminating reference to the agreement containing the Ohio forum selection clause. Again Goodyear has moved to transfer.

The court held a hearing on March 27, 2015. Erin Tognetti and Kathleen Lyon appeared for Morgan Tire; Veronica Dragalin and Eric Enson appeared for Goodyear. The motion to transfer is granted, as explained below.

I.   BACKGROUND

   A.   The 2013 Complaint and Transfer

The court grants Goodyear's request for judicial notice of two docket entries from the previous case, *Morgan Tire of Sacramento, Inc. v. The Goodyear Tire & Rubber Company*, No. 13-2135: the first amended complaint (Prev. Compl.), ECF No. 16, and the court's order granting Goodyear's motion to transfer, Order Nov. 13, 2014 (Prev. Order), ECF No. 39.

According to the previous complaint, between 1993 and 2011, Morgan Tire distributed new tires for Goodyear under a written agreement. Prev. Compl. ¶¶ 9. In 2001 and 2002, Morgan Tire also distributed retread tires under a written agreement. *Id.* ¶¶ 12–13. In 2003, however, Morgan Tire declined to renew its written retread agreement, but continued business with Goodyear "under a partly written and partly oral agreement" consistent with their "well-established course of business dealings." *Id.* ¶ 13. Similarly, in 2012, Morgan Tire also declined to renew its written new tire agreement, but continued its relationship with Goodyear "under a partly written and partly oral agreement" consistent with the parties' "well-established course of business dealings." *Id.* ¶ 11. Morgan Tire referred to these part-oral-part-written agreements as the "distributorship agreements." *Id.* ¶ 13.

Morgan Tire alleged the distributorship agreements excluded the choice of law and forum selection clauses that had been contained in the parties' previous written contract. *Id.* ¶¶ 11, 13. The written agreement provided as follows:

> The terms and provisions of this Agreement shall be construed under and governed by the laws of the State of Ohio without giving effect to the principles of conflict of laws thereof. Dealer [Morgan Tire] agrees that Dealer shall commence, and that Goodyear may commence, any action arising out of or relating to this Agreement in state or federal court in Summit County, Ohio. Dealer irrevocably submits to the jurisdiction of such courts and waives any objection that Dealer may have to either the jurisdiction or venue of such courts.

1  *Id.* Ex. A, at 12.  Morgan Tire alleged its decision to operate without a written agreement
2  embodied its rejection of any choice of law and forum selection clauses.  *Id.* ¶ 14.
3          The distributorship agreements gave Morgan Tire the exclusive right to service
4  Goodyear's national accounts, including to supply new and retread tires to Penske, UPS, and
5  Federal Express.  *Id.* ¶ 15.  Goodyear's products were preapproved for those accounts, so the
6  distributorship agreements saved Morgan Tire years of preapproval delays.  *Id.*  The national
7  accounts made up 55 percent of Morgan Tire's new tire sales and 61 percent of its retread sales.
8  *Id.* ¶ 16.
9          In addition, Morgan Tire's business includes a longstanding relationship with the
10 County of Sacramento.  *Id.* ¶ 17.  Since 1993 Morgan Tire has supplied the County with new
11 Goodyear tires under written agreements, and since 2009 it has supplied the County with retread
12 Goodyear tires.  *Id.*  In 2012, Morgan Tire bid on and was awarded a new agreement to supply the
13 County's new and retread tire needs.  *Id.* ¶ 18.  To ensure it could provide a reliable bid, Morgan
14 Tire had entered a requirements subcontract with Goodyear and relied on pricing figures
15 Goodyear input directly into its bid package.  *Id.* ¶¶ 19–20.  The Sacramento County agreement
16 also included piggyback provisions that allowed the surrounding counties and cities to subscribe
17 to the same terms negotiated by Sacramento County, thereby avoiding an expensive bidding
18 process.  *Id.* ¶ 22.  After Sacramento County awarded Morgan Tire the 2012 contract, the City of
19 Sacramento and the City of Roseville entered piggyback agreements with Morgan Tire.  *Id.*  In
20 reliance on all these agreements, Morgan Tire expanded its retread facilities in Woodland,
21 California, including by purchasing an adjacent parcel of land.  *Id.* ¶ 23.  Morgan Tire also agreed
22 to purchase and install new equipment in its retread plant and use Goodyear "cushion and
23 precure."  *Id.* ¶¶ 21, 23, 27.
24         Throughout the same time period, Morgan Tire was also exploring the
25 construction of a new retread plant in Sparks, Nevada.  *Id.* ¶ 24.  This plant, however, would
26 produce and sell the products of one of Goodyear's competitors, Continental Tires.  *Id.*  When
27 Goodyear's employees heard about this expansion, they warned Morgan Tire, "Goodyear won't
28 be happy—they will cancel you."  *Id.* (capitalization altered).  Over the next several months, the

1  parties' relationship soured. *Id.* ¶¶ 24–27.  In January 2013, Goodyear summarily terminated the
2  distributorship agreements and cut off Morgan Tire's access to Goodyear's online ordering
3  system. *Id.* ¶ 29.  Goodyear explained that Morgan Tire was "not a team player" because it had
4  planned to deal with Continental. *Id.*  As a result of the termination, Morgan Tire was unable to
5  honor its agreements with the County and Cities and lost all its business with Goodyear's national
6  accounts. *Id.* ¶ 31.  Goodyear's subsidiary, Wingfoot, then stepped into Morgan Tire's place and
7  supplied the County and Cities with tires on the same terms as had Morgan Tire. *Id.* ¶ 32.
8  Wingfoot also took on Goodyear's national accounts. *Id.* ¶ 33.

9    By cutting off Morgan Tire, Goodyear allegedly meant to cow other distributors
10 into exclusivity agreements and usurp Morgan Tire's business. *Id.* ¶ 36–37.  Morgan Tire's case
11 was only one of many examples of Goodyear's strong-arm tactics. *Id.* ¶ 26.  Morgan Tire also
12 alleged Goodyear threatened other new and retread distributors who were in discussions with
13 Continental, *id.* ¶ 26, including another dealer in California, *id.* ¶ 35.

14   The previous complaint sought actual, consequential, treble, and punitive damages
15 for Goodyear's alleged conversion, breach of contract, interference with prospective business
16 advantage, breach of the covenant of good faith and fair dealing, and unfair competition. *See id.*
17 at 11–19.  After several rounds of briefing and a hearing, this court granted Goodyear's motion
18 under 28 U.S.C. § 1404(a) to transfer the case to the Northern District of Ohio.  Prev. Order 15.
19 The court reached four conclusions relevant to the pending motion: (1) the forum selection clause
20 in the new tire agreement was part of the parties' continuing contractual relationship, including
21 for both new and retread tire sales; (2) all of Morgan Tire's claims arose out of that same
22 contractual relationship; (3) Wingfoot could rely on the same forum selection clause even though
23 it was not a party to that contract; and (4) Morgan Tire did not establish the presence of any
24 exceptional circumstances such that the forum selection clause was unenforceable. *Id.* at 13–15.

25   B.  The 2015 Complaint

26   The clerk of this court transferred the previous case the day after the court entered
27 its order, and Morgan Tire thereafter voluntarily dismissed the action. *See Compl.* ¶ 8, n.1, ECF
28 No. 1; Opp'n 1:8–12.  On January 16, 2015, Morgan Tire filed its new complaint in this action.

Compl. 21. The new complaint tells an abridged version of the same story set out in the previous complaint.

Morgan Tire has been a Goodyear distributor since 1993. *Id.* ¶ 9. In 2001, Morgan Tire opened a Goodyear retread plant and began manufacturing retread tires under a "well-established course of business dealings." *Id.* ¶ 10. The parties' agreement gave Morgan Tire the exclusive right to service Goodyear's national accounts, which make up about 61 percent of Morgan Tire's business. *Id.* ¶¶ 11–12. Since 1971, Morgan Tire has also done business with the County of Sacramento. *Id.* ¶ 13. It has supplied the County with new tires since 1993 and retread tires since 2009. *Id.* Morgan Tire obtained its most recent contract with the County in reliance on prices Goodyear input directly into its bid package. *Id.* ¶¶ 15–16. The Sacramento County contract included a piggyback provision under which the City of Sacramento and the City of Roseville agreed to buy retread tires on the same terms. *Id.* ¶ 18. In reliance on these agreements, Morgan Tire expanded its retread shop and purchased an adjoining parcel of land. *Id.* ¶ 19.

At the same time it was negotiating with Goodyear and the County, Morgan Tire explored construction of a Continental retread facility in Nevada, and Goodyear threatened termination when it discovered these talks. *Id.* ¶ 20. Goodyear eventually followed through on its threats, terminated its relationship with Morgan Tire, and Wingfoot took over Morgan Tire's business. *Id.* ¶¶ 24–28. Goodyear allegedly meant to discourage any other distributors in Morgan Tire's position from dealing with Continental, *id.* ¶ 30–31, and pilfer Morgan Tire's customers, *id.* ¶ 32.

The 2015 complaint omits any reference to the parties' written agreements. In a footnote, Morgan Tire explains why:

> Morgan Tire previously brought an action in this Court against Goodyear, which action . . . was transferred to the federal court in Summit County Ohio based on the ruling of Judge Kimberley [sic] Mueller . . . that the forum selection clause in an expired new tire distributorship agreement required the transfer. In commencing the instant action, Morgan Tire is not disregarding the order [transferring the case], but is, instead, filing the instant complaint without reference to that agreement . . . .

5

*Id.* ¶ 8, n.1 (capitalization altered).  Anticipating Goodyear's repeat motion to transfer, the same footnote describes four reasons why, in Morgan Tire's view, its case belongs in California: (1) "Morgan Tire . . . does not intend to seek damages based on [the new tire] agreement"; (2) "the actions of Goodyear stem primarily from the retread business as stated in this complaint"; (3) "the County Contracts were breached independently of any other relationship between Goodyear and Morgan Tire"; and (4) since the last complaint was filed, Goodyear has successfully pressured several tire dealers to terminate communications with Goodyear's competitors and deal exclusively with Goodyear.  *Id.*  The complaint also alleges violations of Section 2 of the Sherman Act and Section 3 of the Clayton Act based on the same allegations.  *See* Compl. ¶¶ 69–78.  Morgan Tire's briefing reiterates these arguments.  *See* Opp'n 2–6, ECF No. 16.

In now seeking transfer or dismissal, Goodyear argues Morgan Tire is collaterally estopped from relitigating the enforceability of the forum selection clause.  ECF No. 11 at 6–9. Morgan Tire opposes Goodyear's motion, ECF No. 16, and Goodyear has replied, ECF No. 17.

II.     DISCUSSION

    A.     Applicable Law

"The preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."  *Id.* 891 n.4; *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). "For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata, which [the Supreme Court] has ultimate authority to determine and declare.  *Id.* (quoting *Semtek*, 531 U.S. at 508).  Although this court had jurisdiction over Morgan Tire's previous complaint on the basis of the parties' diversity, federal law governs the enforcement and interpretation of forum selection clauses in diversity cases.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  The court therefore applies federal preclusion law here.  In a very similar case, the Ninth Circuit previously has done the same.  *See Offshore Sportswear, Inc. v. Vuarnet International, B.V.*, 114 F.3d 848, 849–50 (9th

Cir. 1997).[1]  Whatever the choice, the California and federal preclusion rules are very similar, if not identical, *see Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (quoting *Younan v. Caruso*, 51 Cal. App. 4th 401, 406–07 (1996)), and would not lead to different results.

Here, the question before this court is one of collateral estoppel, or issue preclusion.  The Ninth Circuit has articulated three criteria for applying the doctrine:

> (1) [T]he issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (citation and internal quotation marks omitted; second alteration in original).  In other decisions the Ninth Circuit has also required the issue to have been decided in a final judgment on the merits.  *See, e.g.*, *Hydranautics*, 204 F.3d at 885.  Goodyear has asserted preclusion, so it "bears the burden of showing with clarity and certainty what was determined by the prior judgment."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

Here, several prerequisites are clearly established and undisputed.  The parties are the same in this and the previous case.  The issue, enforcement of the forum selection clause, was a necessary part of the court's previous order, and the parties litigated that issue through several rounds of briefing and a hearing.  This leaves two questions unanswered: (1) whether the issue in this case is "identical" to that in the previous litigation; and (2) whether the previous decision was final and on the merits.

B.   Identical Issue

To delineate the scope of a preclusive issue, the Ninth Circuit has embraced the four factors identified in the Restatement of Judgments: (1) whether the evidence or arguments substantially overlap; (2) whether the same rule of law applies; (3) whether "pretrial preparation

---

[1] Although *Offshore Sportswear* was decided before *Semtek*, the Ninth Circuit applied the *Semtek* rule at the time.  *See Bates v. Union Oil Co. of California*, 944 F.2d 647, 649 (9th Cir. 1991).

1  and discovery" in the first matter "might reasonably be expected" to embrace the second; and
2  (4) how closely the claims are related. *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th
3  Cir. 1995) (quoting Restatement (Second) of Judgments § 27 cmt. c).
4  　　　　　The enforceability and breadth of the parties' forum selection clause is the
5  determinative issue in both this and the previous motion to transfer, and Morgan Tire's complaint
6  in this case includes the same factual allegations as its previous 2013 complaint, with the
7  transparent exclusion of only the new tire agreement and its forum selection clause.  Were the
8  court to consider the forum selection clause's reach on a blank slate now, in the face of
9  Goodyear's motion, it would duplicate its previous order, look to the same facts and the same
10 law, and measure the clause against the same claims.  Morgan Tire may not avoid the forum
11 selection clause here by simply deleting express reference to it and seeking damages for breach
12 only of part of the contractual relationship asserted previously.  The court previously has held
13 "[a]ll of plaintiff's claims arise out of the contractual relation in this case."  Order Nov. 13, 2014,
14 at 14:11.  Not just the new tire claims, or the unfair competition claims, or the tortious
15 interference claims.  All of the claims.  Each "relates to interpretation of the contract," *Manetti-*
16 *Farrow*, 858 F.2d at 514, and "arise[s] out of the contractual relation and implicate[s] the
17 contract's terms," *Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988).
18 The same reasoning applies to Morgan Tire's arguments now that the retread agreements are
19 independent contracts and that Goodyear's actions stem primarily from the retread agreements.
20 In short, the parties have already litigated the forum selection clause's reach.
21 　　　　　Neither may Morgan Tire differentiate the issue to avoid preclusion by adding
22 federal antitrust claims.  Its antitrust claims are built on the same allegations as the California
23 business competition claims asserted in its 2013 complaint.  *Compare, e.g.*, Prev. Compl. ¶¶ 76–
24 81 *with, e.g.*, Compl. ¶¶ 70–72, 75–77.  Had Morgan Tire not dismissed its 2013 complaint after
25 transfer, it could have amended its complaint to include federal antitrust claims.  And the same
26 forum selection clause would have applied to those federal claims.  *See, e.g., Stewart Org., Inc. v.*
27 *Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) ("Commercial contractual issues are
28 commonly intertwined with claims in tort or criminal or antitrust law."), *aff'd and remanded to*

*the district court*, 487 U.S. 22 (1988); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) ("Although the complaint was brought pursuant to federal antitrust law, the gist of [the plaintiff's] claim is that [the defendant] wrongfully terminated the agreement, thereby damaging [him]."); *Dawson v. Cagle Cartoons, Inc.*, No. 13-0610, 2013 WL 4829317, at *5 (E.D. Cal. Sept. 9, 2013) ("The Ninth Circuit and courts in this circuit have recognized that the scope of a forum/venue selection clause is not necessarily limited to contract claims. . . . Moreover, courts in other circuits have also found non-contractual claims covered by forum selection clauses." (citing, *inter alia*, *Bense*, 683 F.2d at 720)).

      C.      <u>Final Judgment on the Merits</u>

The court's previous order addressed the merits of the current dispute: whether the forum selection clause is enforceable. As explained above, that issue is the same in both this and the previous case. But was the previous order a "final judgment" as also required for issue preclusion? A motion to enforce a forum selection clause should be brought, as Goodyear has, under 28 U.S.C. § 1404. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, ___ U.S. ___, 134 S. Ct. 568, 579 (2013). A party may obtain review of an order granting or denying a motion to transfer under § 1404(a) by writ of mandamus. *See id.* at 576; *Commercial Lighting Prods., Inc. v. U.S. Dist. Court*, 537 F.2d 1078, 1079 (9th Cir. 1976). Review may also be had by certification for interlocutory appeal. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 24–25 (1988) (citing 28 U.S.C. § 1292(b)). Or a party may simply continue with litigation and seek review on appeal of a final judgment. *See Posnanski v. Gibney*, 421 F.3d 977, 980–81 (9th Cir. 2005); *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991).

Here, Morgan Tire could have sought retransfer in Ohio, whether before or after amending its complaint to omit any reference to the new tire agreement. Should the Ohio district court have denied this motion, Morgan Tire could have sought relief from the Sixth Circuit Court of Appeals and the Supreme Court along the lines described above. *See Moses*, 929 F.2d at 1136–39 (reviewing the transferee district court's decision not to retransfer the case after summary judgment was granted). Rather than pursue this course, Morgan Tire voluntarily abandoned its action. That decision rendered the previous order final. *See Offshore Sportswear,*

9

114 F.3d at 851 ("If [a dismissal] becomes final (as will happen if it is left unappealed), it is preclusive when the issues and the parties remain the same."). It is no defense that, as Morgan Tire suggests, litigation in Ohio would have been more costly. A forum selection clause such as the one here has "controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581 (citation and quotation marks omitted). The court may not at this point consider Morgan Tire's original choice of forum or "arguments about the parties' private interests." *Id.* at 581–82.

III.  CONCLUSION

"Every litigant against whom the transfer issue is decided naturally thinks the judge was wrong." *All States Freight v. Modarelli*, 196 F.2d 1010, 1012 (3d Cir. 1952). Morgan Tire cannot use this second case to request reconsideration, as a matter of law or of sound judicial policy. "[T]he aid of judicial tribunals would not be invoked . . . if . . . conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them." *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48 (1897).

The motion to transfer is GRANTED. This order resolves ECF No. 11. This case is transferred to the United States District Court for the Northern District of Ohio.

IT IS SO ORDERED.

DATED: April 17, 2015.

_____
UNITED STATES DISTRICT JUDGE